JOHN T. PHILLIPS v. JOSEPH W. MACKAY.

| 54 | 319 |
| 66 | 578 |
| 54 | 319 |
| 64e | 745 |
| 54 | 319 |
| 69 | 547 |
| 54 | 319 |
| 66E | 15 |

The attorney of a plaintiff who has recovered a judgment in this court has a claim upon it for his taxable costs and court charges, which is to be preferred to the defendant's right to offset a judgment held by him against the plaintiff.

On motion of the defendant to offset a foreign judgment.

John T. Phillips began an action against Joseph W. Mac-Kay in the Supreme Court of the State of New York for se-ducing plaintiff's daughter. On the 8th day of June, 1889, this action was dismissed for want of prosecution and a judgment rendered in favor of MacKay against Phillips for $141.26 taxed costs, which sum MacKay has paid to his attorney in New York. Phillips brought suit for the same cause of action against MacKay in this court. The cause was tried at the Passaic Circuit at the September Term, 1890, and a verdict rendered in favor of plaintiff for six cents damages. The attorney of the plaintiff obtained a rule to show cause why a new trial should not be granted upon the ground of inadequacy of damages. As a necessary part of the prosecution of this rule, the attorney procured a copy of the stenographer's notes of the testimony, for which he paid $27, and caused the case to be printed at an actual cost of $101.50, which he also paid. The rule was made absolute and a new trial ordered, which resulted in a recovery by the plaintiff of a judgment against the defendant for the sum of $110.50. This judgment does not carry costs in this court. The present application is by the defendant for leave to set off against the judgment in this court the judgment recovered by him against the plaintiff in the State of New York. The attorney of the plaintiff has had his costs taxed as between attorney and client at the sum of $79.89, which, with the disbursements for procuring and printing the testimony, amounts to the sum of $208.09. For this amount the plaintiff's attorney claims to have a lien upon the judgment in this court.

Argued at November Term, 1891, before Justice DIXON,. REED and GARRISON.

For the motion, *Eugene Stevenson.*

*Contra, Stephen B. Ransom.*

The opinion of the court was delivered by

GARRISON, J.   The power of the court to order one judg- ment to be set off against another when the judgments are mutually enforcible by the parties is an exercise of the equit- able jurisdiction of the court, and will be allowed upon such terms as will promote substantial justice. *McAdams* v. *Ran- dolph,* 13 *Vroom* 332; *Brown* ads. *Hendrickson,* 10 *Id.* 239;. The fact that the judgment sought to be set off is in the court of another state, over whose officers and process this court has no control, while it may, in individual cases, militate against ordering the set-off, does not touch the question of jurisdic- tion.   The practice requires that the application be made in the court whose judgment is against the party applying for the set-off; but it has never been required that the court in which the remedy is sought should have control over the judgment used as a set-off. *Brookfield* v. *Hughson,* 15 *Vroom* 285; *Schautz* v. *Kearney,* 18 *Id.* 56.   In the present case,. therefore, the mere fact that the defendant's judgment is in the Supreme Court of New York does not lead to a denial of his application if, in other respects, it will be equitable to allow it. Opposition to the defendant's motion comes, however, not from the judgment creditor, but from the attorney who recov- ered the judgment in this court, who claims a lien thereon for costs and disbursements superior to the defendant's right of set-off.

The question, therefore, is, whether the defendant can have his set-off in the face of the lien of the attorney.

An examination of the practice cases in England and in this. country shows that each of these so-called equities has had the support of precedent and authority.   Nor has this diversity

existed only between separate jurisdictions, for in some instances courts of the same state, and even judges of the same court, have at the same time enforced diametrically opposite rules upon this subject. In the State of New York, for example, the Supreme Court, as early as 1812, held that the attorney's lien did not stand in the way of a set-off between judgments. *Porter* v. *Lane,* 8 *Johns.* 357. This rule was followed by the common law courts (*Ross* v. *Dale,* 13 *Id.* 307 ; *Cooper* v. *Bigelow,* 1 *Cow.* 206 ; *People* v. *New York Common Pleas,* 13 *Wend.* 649), although in *Cole* v. *Grant,* 2 *Cai.* 105, and in *Devon* v. *Boyer,* 3 *Johns.* 247, a contrary doctrine was applied by the same court while Kent was Chief Justice. As Chancellor, however, Kent laid down the rule to be, that "the lien went no further than the clear balance, which is the result of the equity between the parties." *Mohawk Bank* v. *Burrows,* 6 *Johns. Ch.* 317. So that the rule in all the courts of New York was the same until 1829, when Chancellor Walworth reconsidered the point and held that the attorney's lien should be preferred. *Dunkin* v. *Vandenbergh,* 1 *Paige* 622, followed by *Gridley* v. *Garrison,* 4 *Id.* 647. This doctrine was steadfastly adhered to by Chancellor Walworth until, in 1836, he was overruled by the court for the correction of errors on appeal in the case of *Nicoll* v. *Nicoll* (McCoun, V. C.), 2 *Edw. Ch.* 574 ; 16 *Wend.* 446.

The chapter upon this subject in Jones on Liens contains a summary of the courts of this country which allow the set-off and those in which the lien is preferred, and also a list of those jurisdictions in which the matter is now regulated by statute. It is probable that the reason for this contrariety in practice is to be found in the condition of things existing in the courts of England at the time that the practice in this respect was in course of settlement in our courts. It is well known that from the earliest period the Court of King's Bench favored the attorney's lien, while during the same period the Court of Common Pleas did not recognize any right in the attorney excepting as to the clear balance resulting after the equitable set-off between the parties. This state of affairs

drew from Lord Eldon, presiding in the Common Pleas in 1799, a remark which shows his understanding of the practice at that time: "Finding it," he said, "to be the practice of this court that the attorney shall not take his costs out of the fund which, by his diligence, he has recovered for his client when the opposite party is entitled to a set-off, it does not become me to say more than that I find it to be the settled practice with much surprise, since it stands in direct contradiction to the practice of every other court as well as to the principles of justice." *Hall* v. *Ody*, 2 *Bos. & P.* 28. Notwithstanding this vigorous disapproval the practice of the Common Pleas remained the same until 1832, when all the judges of the courts of common law, assembled in Hilary Term, unanimously adopted a rule upon the subject, which gave the preference to the attorney's lien. See 2 *Wm. IV., rule* 93. The same terms were also used in a later rule. *Hilary Term*, 1853, *rule* 63. The English practice under rule of 1883 (*Order XLV., rule* 14) is shown in *Edwards* v. *Hopes*, 14 *L. R. Q. B.* 922. This period of discordant practice corresponds with that during which the rule upon this subject was established in many of the American states, and accounts, as I think, for the seemingly inconsiderate adoption by many of them of the rule based upon the supposed superiority of the equity of the set-off for no other reason than that it was the settled practice of the English Court of Common Pleas. The practice cases of the courts which adhere to this doctrine give no indication that the point has been considered in any other aspect than as one resting upon the authority above given. There are, it is true, instances where the Court of Chancery, upon bill filed, has considered the claim of the attorney, but these cases rest upon the statute of set-off which, as is pointed out in *Nicoll* v. *Nicoll*, 16 *Wend.* 448, raises a totally different question. In this state we have adopted no rule upon this subject broad enough to cover the present motion, but the drift of judicial opinion is in favor of the lien of the attorney. In *Brown* ads. *Hendrickson*, 10 *Vroom* 239, this court directed a set-off except as to the costs, and in *Schautz* v. *Kearney*, 18

*Id.* 56, the order of set-off was not allowed to touch the taxed costs. These decisions, however, do not rule the case in hand for the reason that the costs referred to were those taxed as part of the plaintiff's judgment to be paid by the defendant who sought the set-off, and hence stand upon a different ground to those where, as in the case before us, the judgment does not carry costs and the motion is to protect the costs taxable as between attorney and client. The language of Van Syckel, J., in the former case is broad enough to include even this class of costs, but in the latter case Mr. Justice Depue had evidently in mind only the judgment for costs. The remarks of Scudder, J., in *Newmann* v. *Shipman,* 15 *N. J. L. J.* 83, and the cases cited by him, are upon the doctrine of equitable assignment, and throw no light upon the question of practice under consideration. Regarding the matter apart from authority, and looking at the right and justice of the thing, we think the attorney's claim upon the judgment should not be defeated at the instance of a creditor of his client. An attorney has an absolute lien at law upon the money recovered for his client to the amount of his bill of costs. His right also extends to the stoppage of the money in transitu and to setting aside settlements made between the parties for the purpose of defeating his right of retainer. Further than this his lien at law does not go. He has no charge upon the debt. Hence, as applied to the judgment, the term "lien" is not strictly accurate. *Brunsdon* v. *Allard,* 2 *El. & E.* 19; *Braden* v. *Ward,* 13 *Vroom* 518. The principle, however, upon which the attorney rests his claim to equitable consideration is identical with that which underlies his lien at law. At law the right of lien arises either from possession or from having imparted a value to the property of the lienee. The lien that the attorney has upon the papers of his client and his right to deduct his costs from the money recovered are instances of the former kind of lien, while the claim we are now considering, if not an illustration of the latter class, is at least strongly analogous to it in principle. The judgment is the property of the plaintiff, which not only embodies the labor and skill of the attorney,

but also includes the services of clerks and other officers of
the court for whose payment the attorney has made himself
liable.    In respect to these matters the attorney is clearly
within the principle of the artificer's lien.    The employment
of stenographers in the courts of this state and the use of
printed transcripts of the testimony upon rules to show cause
bring necessary disbursements for these purposes within the
same principle.    No better illustration of the fairness of this
rule could be found than the present case.    The plaintiff had
recovered a verdict for six cents damages.    In order to obtain
substantial damages a new trial was necessary, and the testi-
mony, stenographically taken, had, by the practice of the court,
to be transcribed and printed.    It was done at the cost of the
attorney, who thereby obtained a new trial, which resulted in
the judgment now before us.    It is evident that these dis-
bursements made in the client's interest must stand upon pre-
cisely the same plane as the costs of filing papers or of noticing
the cause for trial.    Whatever may be the debts of the client
to the defendant, this particular fund should stand as security
to the attorney for those costs and disbursements which he was
compelled to make in order to recover it.    Compared to the
peculiar equity of the attorney in respect to such a judgment,
the defendant's general right of offset is remote, and cannot be
permitted to prevail.

I have not lost sight of the fact that the judgment which
the defendant seeks to set off arose from the plaintiff's default
in a suit upon this same cause of action, and that by the law
of New York and the proofs on this motion the defendant,
and not his attorney, is the owner of that judgment.    But that
circumstance does not bring the case within the rule relating
to offsetting of judgments upon interlocutory orders in the
same suit, and hence, as to the attorney, is a fact without sig-
nificance.    The defendant is the mover in this application.    He
has invoked the equitable jurisdiction of this court, and is,
therefore, in the position of one who must do equity.    That,
in our opinion, requires that his demand against the plaintiff
be subordinated to the claim of the attorney to the extent of

the amount of his costs as between solicitor and client and of the actual moneys paid out for stenographer's copy and for printing the case. As the sum of these exceeds the amount of the judgment, the defendant's motion must be denied, but without costs, as the application was made in good faith, without notice of the attorney's claim.