Lyle *v.* Staten Island Terra Cotta Lumber Co.

ROBERT W. LYLE, complainant,

*v.*

STATEN ISLAND TERRA COTTA LUMBER COMPANY, defendant.

[Argued December 3d, 1900. Decided March 4th, 1901.
Filed April 1st, 1901.]

1. Upon distribution of the assets of an insolvent corporation, the right of a preferred creditor to full payment outranks the right of a general creditor to partial payment.

2. In computing the dividend due to general creditors, the claims of preferred creditors are to be excluded from the calculation.

3. Preferred claims for labor are to be paid in full unless it be necessary to encroach upon them to meet the expenses of the receivership.

4. An order of distribution, made in the court of chancery, blended preferred and general claims as a basis for the calculation of a dividend to general creditors. It also unnecessarily charged preferred claims with part of the expenses. The receiver, finding himself embarrassed by this

Lyle *v.* Staten Island Terra Cotta Lumber Co.

order, and before he had taken any action under it that could not be un-
done or by which new rights were created, applied to the court of chancery
for further direction. After full notice and hearing, a final decree was
made, the effect of which is to correct the earlier order in these particu-
lars, and to direct distribution in accordance with the rules above stated.
—*Held*, that the final decree is right in principle, and that the court had
power to make it.

5. The court of chancery has authority to correct, *pendente lite*, an
obvious fallacy in one of its own orders.

On appeal of J. Edward Addicks, a general creditor, from a
decree advised by Vice-Chancellor Emery. No opinion.

*Mr. Sherrerd Depue,* for the appellant.

*Mr. George L. Record,* for the respondent.

The opinion of the court was delivered by

ADAMS, J.

This is an appeal taken by a general creditor of an insolvent
corporation from a final decree dealing with the distribution of
assets.

The essential features of the case are these: The appellant
(J. Edward Addicks) is the largest stockholder and bondholder,
and also the largest general creditor of the Staten Island Terra
Cotta Lumber Company, an insolvent corporation. He is also
one of its receivers. John V. Bacot is the other receiver, and has
alone been active in the administration of the trust. There are
other general creditors, and also creditors who hold preferred
claims for labor. The appellant, on July 2d, 1897, presented to
the chancellor, by petition, an offer to pay for the entire plant,
stock, good-will and assets of the company in the hands of the
receivers, subject to two mortgages, the sum of $100,000, in a
mode specified in the offer. This offer received the approval of
the chancellor, and, on July 23d, 1897, was accepted by an order
of that date, which sanctioned the proposed mode of payment,
and gave further direction in respect thereto.

The offer of $100,000 specified the following mode of pay-

Lyle *v.* Staten Island Terra Cotta Lumber Co.

ment: That the petitioner (Addicks) should .be required to pay in cash into court upon his bid, if accepted, only such proportion of $100,000 as should be determined by the court to belong to creditors other than himself; the remainder of the bid to be paid by proper receipts from said petitioner.

The order of July 23d, 1897, accepted the offer, directed a deed, instructed a master to examine and report on the claim of Addicks against the company, and contained the following provision as to the mode of payment:

"That the said Addicks shall pay unto the said receivers the sum of one hundred thousand dollars in the manner following: That he shall pay of the said one hundred thousand dollars the sum of twelve thousand dollars in cash; that he shall secure by security, satisfactory to the said receivers, the payment of the further sum of six thousand dollars, if the report of the said master shall show the same to be required, and that he shall pay the balance of the said one hundred thousand dollars by proper receipts as a creditor of the said company."

In other words, the plan was that the full amount of the bid, instead of being actually in court, should be theoretically in court, and that the sum to be actually paid into court should be only what was coming to creditors other than the petitioner (Addicks). This arrangement was for the convenience of the petitioner, who naturally wished to save himself the trouble of raising and paying a great sum of money, only that it might be afterwards returned to him. It is apparent that the direction for the payment of $12,000 in cash, and for further security to the of amount of $6,000 was not based on exact figures, but was a tentative provision then estimated to be adequate, but which might turn out, in the end, to be either too large or too small.

The sale was made pursuant to this order. The petitioner (Addicks) paid to the receivers the sum of $12,000 in cash, and furnished further security satisfactory in kind and amount. There are no assets other than the proceeds of this sale that are available for distribution.

The offer and the order accepting it established in outline the rights of the parties in interest. The orders that followed related, for the most part, to matters of detail, and are to be read in connection with the offer and order of acceptance. The en-

gagement of the accepted bid amounted to this: that out of the sum of $100,000, the labor claims, which were only a little more than $2,000, should be paid in full, and that a dividend should then be distributed to general creditors, including the petitioner (Addicks), whose share of the dividend would be represented by his receipts. This construction gives effect to the terms of the offer and order of acceptance, maintains the preference of labor claims and secures among general creditors the equality that is equity. The offer said nothing about expenses. Nevertheless they were to be paid, and paid so as to make them a common burden upon the general creditors. Preferred claims for labor are always to be paid in full, unless it be necessary to encroach upon them to meet the expenses of the receivership. This was not the fact here. The expenses were to be taken care of, in this case, by charging them against the dividend to general creditors proportionately to the amounts of dividend due to the general creditors respectively.

The outcome, then, would be this: Each preferred creditor would get the full amount of his claim. Each general creditor, other than the petitioner (Addicks), would get a cash dividend on his claim, charged with a proportional part of the expenses. The petitioner would be charged, as general creditor, with his proportional part of the expenses. If any other questions should arise they would be settled on equitable principles, and so as to harmonize with the scheme above indicated.

This being the general relation of the parties in interest, the court of chancery proceeded, by orders made from time to time, to fill in the detail. As all the papers in the suit have not been sent up, some points are obscure. This obscurity need not embarrass this court in deciding the case, since the record that is now before it would lead to a decree more unfavorable to the appellant (Addicks) than the one to which he objects.

The receiver (Bacot) and the appellant differ as to the state of the account. The receiver insists that the cash payment of $12,000 is insufficient, and asks for authority to make up for the insufficiency out of the security given by the appellant. On the other hand, the appellant says that the cash payment was larger than was necessary, and that the receiver should refund a part of it.

Lyle v. Staten Island Terra Cotta Lumber Co.

The amount of the claims of preferred creditors for labor was fixed at $2,279.39. By an order dated August 8th, 1898, the receivers were directed to pay these labor claims. They have done so, except in the case of certain creditors who could not be found, and of one creditor who refused to take his money. The sum of $1,000 was allowed to the counsel for the receivers, and this somehow, perhaps by interest or disbursements, was increased to $1,016.36. The sum of $600 was allowed to Bacot, receiver, for services rendered subsequent to October 1st, 1897, besides $103.38 for certain of his disbursements, and also a sum not exceeding $100 for the expenses of carrying out the order of distribution. The taxed costs of the complainant and of the receiver were taxed and ordered to be paid. The amount of these taxed costs does not appear. The allowance of the receiver was thus, it seems, or in some other way, brought up to $1,198.92. The expenses therefore, so far as the record shows them, came to $2,215.28. The claim of Addicks, as a general creditor, was ascertained to be $730,170.60, and the claims of the other general creditors to be $91,602.58. The aggregate of claims due to general creditors was therefore $821,773.18. If from $100,000 be deducted the preferred claims it will be seen that the amount of the bid that is available for the payment of general creditors is $97,720.61, which will give to each general creditor a dividend of about twelve per cent. upon his claim. The decimal .118911 is nearly correct. The aggregate of the dividend due to general creditors, other than Addicks, is $10,892.84. There is chargeable against this aggregate the sum of $245.91 for expenses. The dividend due to Addicks, as general creditor, is $86,827.77. There is chargeable to him the sum of $1,969.37 for expenses. The account, then, stands as follows:

| | |
|---|---:|
| Preferred claims | $2,279 39 |
| Dividend to general creditors other than Addicks (subject to a charge of $245.91) | 10,892 84 |
| | $13,172 23 |
| Cash payment by Addicks | 12,000 00 |
| Deficiency of cash payment to meet preferred claims and dividend to general creditors other than Addicks | $1,172 23 |

There is also chargeable to Addicks the sum of $1,969.37 as his share of the expenses. The amount that he has to make up is therefore $3,141.60.

The decree appealed from, which bears date October 3d, 1900, is drawn on the general lines above laid down. The learned vice-chancellor who advised it did not think it necessary to write an opinion. This decree fixed the amount to be made up by Addicks at the sum of $2,264.35, directed him to pay that sum to Bacot, receiver, and empowered the receiver, upon default of such payment, to raise the money by the sale of securities in court.

The *data* afforded by the record, which may be incomplete, indicate, as above stated, that the amount to be made up by Addicks is greater than the sum fixed by the court of chancery. The receiver, however, does not appeal. Upon the view herein expressed the decree is correct in principle, and, as it is not clearly shown to be erroneous in detail, it should be sustained, unless it is faulty for some reason not yet mentioned. This leads to a consideration of the specific criticism of the decree that is made on behalf of the appellant, about which nothing has thus far been said.

It is insisted that the decree appealed from ought not to stand, because it is inconsistent with a prior order of distribution, dated July 27th, 1900, which is more favorable to the appellant. It remains to examine this order.

In the reciting part of the order of July 27th, 1900, there occurs this declaratory clause:

"And it appearing that the remaining moneys on deposit with the clerk of this court to the credit of the above cause, after the payment of receiver's fees and his taxed costs in the above matter, should be distributed among the creditors of the defendant company, other than the said Addicks, who is to be excluded from sharing in any portion thereof except as to any claims held by him in excess of eighty-eight per cent. of the total indebtedness as found and allowed."

It is said on behalf of the appellant (Addicks) that the words "total indebtedness as found and allowed," in the declaratory clause, mean the entire indebtedness of the company, both preferred claims and claims of general creditors; that this aggre-

gate indebtedness is $824,052.57; that Addicks has proved a claim as general creditor in excess of eighty-eight per cent. of this amount; that he has paid into court twelve per cent. of the amount of his bid, and that consequently he is entitled to share in the actual cash dividend, on the basis of the excess of his claim over eighty-eight per cent. of such total indebtedness.

It is evident that this construction of the declaratory clause throws the account into confusion by jumbling together the claims of general and of preferred creditors. These elements are incongruous. They will not blend to form a homogeneous basis for the calculation of the amount due to a general creditor. Such an interpretation of the declaratory clause does not harmonize with anything else in the case, or with the equitable rules that should govern the distribution of these proceeds of sale. Still, it must be admitted that this is the natural meaning of the words of the declaratory clause.

The decretal part of the order of July 27th, 1900, fixes the compensation of Bacot, receiver, directs the payment of taxed costs and then proceeds as follows:

"And it is further ordered that said payments be made by the receivers out of the funds now on deposit with the clerk of this court, in said cause, and by said J. Edward Addicks out of the funds retained by him on his bid for and purchase of the assets of the said defendant company, in the proportion that the amount of claims proved by creditors other than the said Addicks bears to the proved indebtedness of the company to said J. Edward Addicks.

"And it is further ordered that the said receivers, after making the payments out of the funds in this court, authorized by this order, and any other order of the court, pay the remainder of the said funds to the creditors whose claims have been allowed by the said receivers, other than the said Addicks (except as aforesaid), distributing the same *pro rata* among the said creditors, according to the amount of their respective claims."

It must be admitted, again, that the decretal part of this order is consistent with its reciting part. The last sentence quoted from the decretal part refers, by the words "except as aforesaid," to the averment of the declaratory clause, and is a distinct recognition and adjudication of the appellant's right to a share in the cash that he paid into court. Nevertheless it is plain that the appellant has no such right. It is to be observed, also, that

the first sentence quoted from the decretal part of the order of July 27th, 1900, imposes a part of the expenses upon the preferred claims, which are not chargeable with that burden.

The arithmetical proposition on behalf of the appellant (Addicks), which finds expression in the declaratory clause of this order, and is the basis of so much of its decretal part as is favorable to him, is that, since his claim exceeds eighty-eight per cent. of all claims and since he has paid in cash twelve per cent. of his bid, it must be true that some money should come back to him. This inference would be inevitable if the claims were of the same class. Some of them are of a superior class, and because of their superiority were entitled to be paid, and have been paid, in full. As to such claims no question of percentage arises, for upon such claims there is no dividend. Their payment is not partial, but complete. In order to validate any argument in favor of a general creditor founded on a comparison of percentages of claims and cash, it is necessary, first, to eliminate the preferred claims from both sides of the calculation. The amount of the appellant's bid that is available for the payment of the claims of general creditors is not $100,000, but $97,720.61. The appellant's payment of cash that is available to general creditors, other than himself, is not $12,000, but $9,720.61. As to his own claim, the inquiry should be, not what percentage it is of all claims, but what percentage it is of the claims of general creditors. This process of elimination affects the cash in court in two ways. On the one hand, it diminishes the amount of cash; on the other hand, it increases the demand upon the cash by raising the percentage of those claims for the payment of a dividend upon which the cash is available. The relation of the claim of the appellant to the total claims of general creditors is expressed by the decimal .88853. The relation of the aggregate claims of other general creditors to the total claims of that class is expressed by the complementary decimal .11147. The relation of $9,720.61, which is the cash available to other general creditors, to $97,720.61, which is the amount of the bid that is available for the payment of all general creditors, is expressed by the decimal .09957. As the decimal that represents the cash is smaller than the decimal that represents the claims on which a dividend is to

Lyle v. Staten Island Terra Cotta Lumber Co.

be paid in cash, it is evident that the amount of cash in court, instead of being too great, is too small; in other words, that it is insufficient for the payment of the dividend to general creditors other than the appellant. The difference between these two fractions is the decimal of the deficiency hereinbefore ascertained.

Receiver Bacot, finding himself embarrassed by the earlier order, applied to the chancellor, on August 27th, 1900, for further direction. The decree appealed from is the result of this application. It adopts "the plan of settlement recommended by the receiver," which coincides with the view expressed in this opinion, and, in effect, corrects the errors of the order of July 27th, 1900.

The decree appealed from dealt, also, with a question as to interest on the fund in court. It appears that the $12,000 paid by the appellant to the receiver, pursuant to the order of July 23d, 1897, was deposited with the clerk in chancery, and that interest has accrued upon it in the hands of the clerk to the amount of $770.76. The decree appealed from directs the receiver to pay this interest to the general creditors other than the appellant. This is right. There is no other place for it. The appellant cannot claim for himself any part of the interest of a fund that belongs wholly to others.

The receiver's petition for further direction raised every question important to be considered. He had taken no action under the former order that could not be undone, or out of which new rights had arisen. The final decree was made after hearing, upon full notice. It should stand, unless the court of chancery is without power to correct, *pendente lite,* an obvious fallacy in one of its own orders. It has such power. *Morris* v. *Taylor, 8 C. E. Gr. 131; Jones* v. *Davenport, 18 Stew. Eq. 77.*

The decree is affirmed.

*For affirmance*—The Chief-Justice, Van Syckel, Dixon, Collins, Fort, Garretson, Hendrickson, Bogert, Krueger, Adams, Vredenburgh, Voorhees—12.

*For reversal*—None.