Bergen County Orphans Court.

IN THE MATTER OF THE ESTATE OF LUCY I. McCORMICK, ALSO KNOWN AS MacCORMICK, DECEASED.

Decided January 10, 1936.

For the petitioner, *Walter J. Freund, pro se.*

Opposed, *Kipp & Ashen.*

LEYDEN, C. P. J. This application, seeking the equitable intervention of the court, was originally made in our Court of Common Pleas on petition and order to show cause, as a step in the cause there pending, but later transferred by mutual consent to this court. The litigants have agreed that the determination here will be effectual and binding in the action in the pleas.

The petitioner, Walter J. Freund, a duly licensed attorney and counselor-at-law of the State of New Jersey, seeks to impress a lien for legal services rendered by him to Arthur T. W. MacCormick in the matter of the above estate, and to the extent of the sum of $150 to discharge the writ of attachment issued out of the Court of Common Pleas in the matter of Charlotte C. McCormick, plaintiff, *v.* Arthur T. W. MacCormick, defendant. The facts are: On January 6th, 1930, Lucy I. McCormick died intestate, a resident of this county, leaving her surviving as her only heirs-at-law and next of kin

Charlotte C. McCormick, a sister; Mildred L. McCormick, a sister; Mildred McCormick, an infant, daughter and only child of Gerard C. McCormick, a deceased brother; Hannah McCormick, widow of said Gerard C. McCormick, deceased; Arthur T. W. MacCormick, a brother, and Edmond V. Mac-Cormick, a brother. On October 18th, 1933, Charlotte C. McCormick qualified as administratrix of the estate of Lucy I. McCormick and letters of administration were issued to her.

Subsequently, she stated and filed her account as administratrix under citation so to do, and the brothers, Arthur T. W. MacCormick and Edmond V. MacCormick, being dissatisfied with certain items of charge and discharge, filed exceptions thereto. For this purpose, Arthur T. W. MacCormick retained the petitioner to act as his proctor, it being agreed that the petitioner's fee would be paid from MacCormick's distributive share of the estate. Some of the exceptions were well taken and the administratrix was surcharged in the sum of $2,995.71. This resulted in raising the distributive share of Arthur T. W. MacCormick from a negligible amount to the sum of $646.68. On March 6th, 1935, by a decree of this court, it was ordered and adjudged that the balance remaining in the hands of the accountant, Charlotte C. McCormick, amounting to $3,233.44, be disposed of according to law, and thereupon Arthur T. W. MacCormick became entitled to receive his distributive share. It was not paid, but on March 25th, 1935, a writ of attachment was sued out of the Bergen County Court of Common Pleas at the suit of Charlotte C. McCormick, plaintiff, v. Arthur T. W. MacCormick, defendant, wherein it is alleged that on or about the 2d day of June, 1931, the plaintiff loaned to the defendant the sum of $600 to be repaid on demand. To the allegations of the complaint, defendant has filed a general denial and the issues thereby presented are awaiting determination.

Pursuant to the writ, the sheriff of the county of Bergen attached in the hands of Charlotte C. McCormick, as administratrix, the distributive share of Arthur T. W. MacCormick.

MacCormick, though anxious and willing to compensate Mr. Freund in the sum of $150 for the services rendered, is

thus prevented from so doing, and the petitioner, anticipating and rightly so, that the attachment action may defeat his just claim, seeks as one of its officers, the protection of the court.

I think his contention is meritorious.

From the earliest times, founded in the common law, an attorney has had the right to retain possession of all documents, money, or other property of his client coming into his hands professionally until a general balance due him for professional services is paid. This right, sometimes called the general or retaining lien, extends to any general balance that may be due to an attorney for professional services, either in the particular matter with which he came into possession of the things retained or in any other matter. 6 *C. J.* 765, 766, ¶¶ 362, 363.

In 1914 our legislature recognized the necessity of affording greater protection to attorneys, counselors and solicitors from unscrupulous clients and created the familiar statutory lien. The purpose was to broaden the rights of attorneys in the matter of their compensation, and to impress a lien upon the client's cause of action therefor, even in the event of an amicable settlement. *Pamph. L.* 1914, *ch.* 201, *p.* 410; *Cum. Supp. Comp. Stat.* 1911-1924, *p.* 1805, § 116-76.

The facts presented here do not give the petitioner the right of the common law retaining lien, for the money did not come into his hands professionally. Likewise he can take no benefit from the statutory lien of 1914, for the proceeding in which his services were rendered was not commenced by the service of a summons and complaint or the filing of an answer containing a counter-claim in an action at law or the filing of a bill of complaint or petition in the Court of Chancery.

The petitioner is not without remedy, however. He is entitled to the equitable intervention of the court upon another theory, that of equitable assignment, one which has also been judicially recognized from very early times. This right, sometimes inaccurately called the attorney's charging lien, is the right to have the fees and costs due to him for services in a suit, secured to him out of the judgment or recovery of that particular suit. The attorney, to the extent

of such services, is regarded as an equitable assignee of the judgment. 6 *C. J.* 766, ¶ 364. The right of the attorney to the equitable intervention of the court has been recognized and enforced in *Brown* ads. *Hendrickson,* 39 *N. J. L.* 239; *Terney* v. *Wilson,* 45 *Id.* 282; *Phillips* v. *MacKay,* 54 *Id.* 319; 23 *Atl. Rep.* 941; *Pride* v. *Smalley,* 66 *N. J. L.* 578; 52 *Atl. Rep.* 955, and *Delaney* v. *Husband,* 64 *N. J. L.* 275; 45 *Atl. Rep.* 265.

Under the doctrine as enunciated in *Terney* v. *Wilson, supra,* it would appear that the attorney's right extends not only to cover the court costs for which he is responsible, but also to cover the fees due him by contract or under a *quantum meruit.*

The decree of this court on the final account, entered March 6th, 1935, was the law's last word in the judicial controversy concerning the stewardship of the administratrix. It judicially determined that there was in the hands of the accountant the sum of $3,233.44 to be disposed of according to law. This decree was in every sense a judgment conclusively determining, with the aid of a simple mathematical calculation, the distributive share of MacCormick. It is, in my opinion, such a judgment or order as is contemplated in the doctrine of equitable assignment for the protection of the attorney.

The petitioner, pursuant to his agreement with MacCormick, labored industriously and skillfully in the preparation for and hearing of the exceptions to the account. As a result of his efforts the accountant was surcharged approximately $3,000. This represents practically the entire fund now in the hands of the accountant for distribution. His services were not only of value to his client but to the estate generally.

The personal estate consisted principally of money in the bank with a few odd household effects of no great value and, although no decree of distribution was taken by the accountant or any of the distributees, the accountant acquiesced in the decree on the final account, and, by her action in suing out the writ of attachment and levying upon MacCormick's distributive share, she effectively set that portion of the estate apart as MacCormick's property, and by implication, at least,

admitted that she, as administratrix, was indebted to him in that sum.

The agreement between the petitioner and his client that the petitioner should be paid for his services out of the distributive share to be recovered in the sum of $150 as compensation for his services constituted a valid, equitable assignment of that share *pro tanto* which attached as soon as the decree was entered on March 6th, 1935. *Terney* v. *Wilson*, 45 *N. J. L.* 282. It was not until March 25th, 1935, that the writ of attachment was issued and the share levied upon. The equitable right acquired by Mr. Freund was prior to any rights Charlotte C. McCormick may have gained by virtue of the writ of attachment, and the effect of that writ must be limited to so much as remains after satisfying the petitioner's claim of $150.

The Orphans Court, on the accounting, allowed a counsel fee of $150 to Mr. Freund to be paid by the accountant personally. It is now insisted in her behalf that by reason thereof, petitioner has been fully and completely compensated for his services to his client in the cause, citing *King* v. *Foerster*, 61 *N. J. Eq.* 584; 47 *Atl. Rep.* 505, wherein Magie, Ordinary, pointed out that such an allowance is not to be treated as a penalty imposed upon a delinquent trustee and graduated by the court's sense of his misconduct, but only as an imposition upon the trustee of the expense which the beneficiary has been required to pay to compel a proper account.

It is admitted that no attempt is made to dictate the amount which petitioner may charge his client for the services rendered but insisted that any amount in excess of the allowance made by the court must be liquidated by the client. That is exactly what is accomplished by this proceeding. The argument fails to take into consideration the services incidentally rendered by Mr. Freund to the estate generally, and it may well be that the court had in mind that fact in fixing the amount of the allowance against the accountant.

I will sign an order accordingly.