EDNA B. FLAVELL, complainant,

*v.*

WILLIAM WATSON FLAVELL, defendant.

[Decided February 2d, 1937.]

*Mr. John Trier, pro se.*

*Messrs. Carl & William Abruzzese* (by *Mr. Carl Abruzzese*), for the respondent Edna B. Flavell.

GROSMAN, A. M.

This is an application by Mr. John Trier, of the Essex bar, to amend the final decree entered in this cause; to have his compensation for services determined and to impress a solicitor's lien therefore upon the respondent's alimony. He prays that the decree be amended by deleting therefrom this provision:

"And it is further ordered, adjudged and decreed that the said defendant do further pay to the complainant or her solicitor, the cost of this suit to be taxed and also the sum of $750, *which is hereby adjudged and decreed to be a reasonable counsel fee for the counsel of said complainant;*" and substituting therefore the following clause:

"And it is further ordered, adjudged and decreed that the said defendant do pay to the complainant or her solicitor the costs of this suit to be taxed and also the sum of $750, which is hereby adjudged and decreed to be a reasonable amount to be paid by the defendant toward the complainant's expenditures and obligations for legal services rendered to her in the preparation and trial of this cause."

The reason for this application is that the respondent, after having agreed with her solicitor, Mr. Trier, as is said, to pay him the sum of $2,000 for his services in this cause to September, 1934, and a reasonable sum for his services thereafter, has seized upon the peculiar phraseology of this paragraph to deny him all further compensation, contending that by the language of the decree the value of the services rendered by Mr. Trier to her has been expressly adjudicated to be the sum of $750 and he is therefore entitled to no more.

Petitioner concedes that under a literal interpretation of the language used in the decree, his former client's contention is sound, but he argues quite convincingly, that he prepared the decree and that it was neither his, his client's, nor the court's intention that any such limitation be placed upon

him in respect to compensation and that simple justice requires that the decree be amended so as to permit him to have the benefit of his contract.

To this argument, Mr. Carl Abruzzese, appearing specially for Mrs. Flavell, I having refused to permit his substitution in place of Mr. Trier while the matter of his compensation is in dispute, raises three technical objections, namely:

1. The petitioner, Mr. Trier, is not a party to the suit and has no standing to seek an amendment or modification of the final decree.

2. The petitioner shows no surprise, fraud, or newly discovered evidence, and therefore, fails to make out a case warranting the reopening and modification of the final decree.

3. Application to reopen and modify a final decree must be by bill of review and not by petition and order to show cause as is attempted in the instant case.

I will take these points up in their order.

The respondent's argument in support of her first contention is that the petitioner, in his capacity as solicitor, is obviously not a party to the suit in the same sense as the complainant or defendant; that in respect to costs and counsel fees, he is accorded no standing by law because these items are payable not to the solicitor but to his client. Not so. It is true that costs and counsel fees are allowed in right of the litigant, but they are payable to the solicitor.

Vice-Chancellor Backes, in the case of *Cicalese* v. *Fortunato, 92 N. J. Eq. 329* (at *p. 330*); *112 Atl. Rep. 508,* holds that:

"The first question is whether the attorney who recovered the judgment, the fruits of which I am called upon to dispose of, is entitled to be compensated. The cause was litigated before a jury in the circuit court, and on appeal in the supreme court and court of errors and appeals. The taxed costs in the three courts form part of the fund paid into this court. The attorney, of course, is entitled to costs. *Phillips* v. *MacKay, 54 N. J. Law 319.* He is also entitled to be compensated for his services under chapter 201, laws of 1914 (*P. L. 1914 p. 410*), which gives attorneys 'a lien for compensation upon his client's cause of action, suit, claim or counter-claim.' "

In the very well considered case of *Phillips* v. *MacKay, 54 N. J. L. 319; 23 Atl. Rep. 941,* Mr. Justice Garrison, speaking for the supreme court, holds that:

"The attorney of a plaintiff who has recovered a judgment in this court has a claim upon it for the taxable costs and court charges, which is to be preferred to the defendant's right to off set a judgment held by him against the plaintiff."

See, also, *Pride* v. *Smalley, 66 N. J. Law 578; 52 Atl. Rep. 955.*

It follows that if the court will recognize a solicitor's right to taxable costs against his client's innocent creditor, whose rights are usually preferred, the same protection must be accorded an unpaid solicitor when his right in this regard is challenged by his own client.

In *Columbia Insurance Co.* v. *Artale, 112 N. J. Eq. 505; 164 Atl. Rep. 864,* Vice-Chancellor Backes held specifically, that: "Taxed costs are awarded to the client but they belong to the attorney." Under section 91 of our Chancery act (*1 Comp. Stat. p. 445 § 91*), "a counsel fee, on order of the chancellor, may be included in the taxed costs and thereupon becomes a part thereof." *McMullin* v. *Doughty, 68 N. J. Eq. 776; 55 Atl. Rep. 115; affirmed, 68 N. J. Eq. 76; 64 Atl. Rep. 1134.*

It is true that a solicitor in a cause is not a party to it in the same sense as a complainant or defendant, but he is a party thereto in his own right, as an 'unpaid solicitor.' *Ferraro* v. *City Hall Garage (Court of Errors and Appeals), 94 N. J. Law 209; 109 Atl. Rep. 358.*

The respondent's second contention against the re-opening of the decree, namely that neither surprise, fraud, nor newly discovered evidence is shown, is untenable. These considerations are in nowise involved. The issue is whether the decree as it now stands "gives full expression to the court's judgment and whether the matter sought to be included therein is such as would without doubt have been incorporated in the decree when made, if attention had been called to it." The answer is obvious. It was certainly not Mr. Trier's intention at the time he submitted the decree, to limit its effect so as to deprive himself of just compensation; and most assuredly it

was not the purpose of the court to do so. In fact, I recall very distinctly that counsel requested a counsel fee of $2,500. In allowing him the sum of $750, I stated explicitly that he could not expect the defendant in the main cause to fully compensate him for all his services to his client. The counsel fee allowed was to aid her in defraying the expense of litigation and not in full satisfaction thereof; that for the balance of his fee he was required to look to his client. *Strong & Sons* v. *Mundy, 52 N. J. Eq. 833; 31 Atl. Rep. 611;* reversing *52 N. J. Eq. 744; 30 Atl. Rep. 322.*

The right of this court to amend its enrolled decree when such amendment is necessary to give full expression to its judgment, in a matter which would without doubt have been incorporated therein when made, if attention had been called to it, is too well settled in our equity jurisprudence to be successfully challenged. *Lynde* v. *Lynde, 54 N. J. Eq. 473; 35 Atl. Rep. 641; Lyle* v. *Staten Island Terra Cotta Lumber Co. (Court of Errors and Appeals), 62 N. J. Eq. 797* (at *p. 805*); *48 Atl. Rep. 783; Jarmon* v. *Wiswell, 24 N. J. Eq. 68.* The court may, on its own motion, open a decree if in its judgment the ends of justice require it. *Morris* v. *Glaser, 106 N. J. Eq. 585; 151 Atl. Rep. 766.*

The third objection raised by the respondent, namely that the petitioner should have initiated these proceedings by bill of review and not by petition and order to show cause, is likewise without merit. Whatever the procedural requirements may have been in ancient days, the modern practice in respect to the opening of a final decree is by petition and order to show cause. *Morris* v. *Glaser, supra; Lynde* v. *Lynde, supra.*

The respondent further questions petitioner's right to have his compensation fixed by this court and to have a lien therefore impressed upon her alimony, on three grounds. She contends:

1. Petitioner's claim is unliquidated and the court of chancery has no jurisdiction to determine the same because the respondent is entitled to a jury trial.

2. Petitioner is not entitled to a lien upon the respondent's alimony because he has waived any right which he may have had thereto.

3. Alimony is not available for the payment of counsel fees because it is a personal and not a property right.

I see no substance in any of these contentions. This court has repeatedly passed upon the reasonable value of services rendered by a solicitor to his clien in a cause pending herein. In every instance the matter has been adjudicated according to established equity practice by the court without the intervention of a jury. These cases have been assembled by Mr. Justice Parker in *Arlale* v. *Columbia Insurance Co., 109 N. J. Law 463* (at *p. 465*) ; *162 Atl. Rep. 585* (at *p. 586*).

A suitor coming into this tribunal submits himself fully to the jurisdiction of the chancellor, for all purposes incident to the matter in controversy. A solicitor's compensation is an integral part of every such cause and both client and counsel are of right entitled to have any dispute concerning the reasonableness thereof passed upon by this court. It is axiomatic that one who seeks equity must do equity. A suitor who has obtained relief in this court is in equity bound to compensate the solicitor through whose offices his remedy has been obtained. The power of the chancellor has been repeatedly invoked on behalf of clients from whom unconscionable fees have been exacted. There is no reason, either in logic or justice, why a solicitor should not be equally privileged to come into this court and seek its intervention where his client would deal unfairly with him. This court is open to all alike.

When the respondent selected this forum in which to litigate her main cause, she *ipso facto* acquiesced to our procedural requirements and will not be heard to complain now that our practice is objectionable to her because it does not embrace the use of a jury. In fact, this is the only court in which the petitioner may press his claim. Whatever doubt there may have been upon this point is set at rest by the case of *Simon* v. *Globe Indemnity Co., 9 N. J. Mis. R. 392; 154 Atl. Rep. 238,* which holds that:

"The lien, given to an attorney, counselor-at-law, or solicitor in chancery, under *P. L. 1914 p. 410,* upon any cause of action, is enforceable by petition to the court in which the original action was brought."

In this cause the original action was brought in the supreme court. Subsequently the attorney instituted suit in the district court to recover for his services. A nonsuit was entered on the ground that the action should have been brought in the tribunal where the original action was instituted. The nonsuit was affirmed *"per curiam"* by our supreme court and the decision was cited with approval by our court of errors and appeals in *Artale* v. *Columbia Insurance Co., 109 N. J. Law 463; 162 Atl. Rep. 585.*

Mr. Justice Parker, speaking for the court of errors and appeals in the last named case, holds that:

"The statutory lien of an attorney, solicitor, &c., attached to a cause of action by *P. L. 1914 p. 410,* is to be enforced by petition to the same court in which the action has been brought, and to be determined by that court."

At page 465, in speaking of the summary character of such proceedings, the court has this to say:

"* * * The *Levy Case* came up from a court of law and perhaps the opinion should be read in the light of that fact; for the act of 1914 is applicable to courts of equity as well, and expressly provides that 'the court in which such [main] action * * * is pending, upon the petition of the attorney, solicitor, or counselor-at-law, may determine and enforce the lien.' This language was treated as mandatory by the supreme court in *Simon* v. *Globe Indemnity Co., 9 N. J. Mis. R. 392; 154 Atl. Rep. 238.* Assuming the correctness of that view, then it follows that the statutory lien of a solicitor in a chancery suit must be ascertained and enforced in chancery; and presumably according to the usual practice of that court without a jury, as in *Cicalese* v. *Fortunato, 92 N. J. Eq. 329.* Recent cases in which chancery has undertaken to settle the amount of a lawyer's charges without a jury apart from the statute now under consideration, are *Ramondi* v. *Bianchi, 100 Id. 448; 102 Id. 254; Sinisi* v. *Millon, 107 Id. 179,* and *Grimm* v. *Franklin, 102 Id. 198; affirmed, 146 Atl. Rep. 914."* * * *

Even apart from the statutory enactment (*P. L. 1914 p. 410*) this court has original jurisdiction to entertain a solicitor's petition for compensation. It follows therefore, that

irrespective of whether the proceedings are initiated under the statute or under the court's inherent power, the issue will be disposed of according to our established practice, without a jury.

Respondent contends further against this application that no lien can be accorded petitioner because he has waived any right which he may have had thereto. I am unable to accede to this proposition. I cannot understand precisely how a solicitor may be said to have waived his lien in a "maintenance action." Nothing of tangible value ever comes into his possession. Usually he is supplied with a miscellaneous collection of exhibits which after the termination of the suit is of value to no one. In an action of this nature there is absolutely nothing upon which he may impress a lien in the common law sense. A common law lien, of course, is dependent entirely upon possession. A statutory or equitable lien, however, is not. *37 Corp. Jur. 326* ¶ *35* and cases there cited. This distinction is recognized by our court of errors and appeals in the case of *Lanterman* v. *Luby, 96 N. J. Law 255; 114 Atl. Rep. 325.*

Perhaps a great deal of confusion has arisen unnecessarily in respect to this subject because of the use of the word "lien" in respect to the attorney's claim for compensation. The use of this term immediately conjures up the thought of the old "common law lien." This, of course, was entirely dependent upon possession. Under a simpler order, perhaps it sufficed. Material was delivered to an artificer. He expended his labor thereon and retained possession of the article until he was paid for his services. This obviously cannot be true in respect to a solicitor's services. Most often the matters involved in litigation are not susceptible to the solicitor's possession, *i. e.,* a right of way; the restraint of a nuisance, an injunction, &c. What the solicitor really has is a right to have his claim for compensation passed upon by the court. Our court of errors and appeals adopted this view in *Delaney* v. *Husband, 64 N. J. Law 275; 45 Atl. Rep. 265.* Mr. Justice Dickson, speaking for the court (at *p. 276*), holds:

"* * * So, after a judgment or order for payment of money in favor of his client, he has what is sometimes called

a lien thereon for his costs (*Braden* v. *Ward, 13 Vr. 518*), which, however, Chief-Justice Cockburn, in *Mercer* v. *Graves, L. R. 7 Q. B. 499*, described as 'only a claim or right to ask for the intervention of the court for his protection, when, having obtained judgment for his client, there is a probability of the client depriving him of his costs.' "

In the well considered case of the appeal of *Harris et al. (Pa.), 186 Atl. Rep. 92,* the Pennsylvania supreme court arrived at an eminently equitable solution of a similar problem by grafting on to the trunk of the common law lien a new shoot, which it terms a "charging lien," in order to cover a situation where an attorney created a fund which never came into his possession. If we are by precedent and tradition, inescapably bound to use the term "lien" in this connection, perhaps this hybrid created by the courts of our sister state offers as good a solution as any. Irrespective, however, of how the proceedings may be labeled, an unpaid solicitor has an unequivocal right to petition this court to have his compensation for services rendered determined and he is entitled to our aid in securing payment. Where the proceeds of litigation are either in the possession of the court or in that of the solicitor, a lien for the amount due will be impressed directly thereon and satisfaction decreed therefrom, otherwise satisfaction of the award may be had according to the usual practice of this court by means of the writ of *fieri facias.*

The remaining objection is that "alimony is not available for the payment of counsel fees." The respondent quotes in support thereof the case of *Lynde* v. *Lynde, supra,* wherein Mr. Justice Pitney, speaking for the court of errors and appeals, holds:

"A wife's claim for an allowance of permanent alimony, on a divorce *vinculo,* is a purely personal right and not a property right. Alimony to be allowed and paid *in futuro,* is intended for the personal benefit and support of the wife, and in its nature is not susceptible of assignment by the wife to another, nor capable of being enjoyed by her in anticipation.

"A contract between a wife and her solicitor, providing that for his services in procuring an allowance of alimony and enforcing its payment he shall receive a share of the alimony

recovered, is void not only because the claim for alimony is incapable of assignment, but also because the contract is in contravention of public policy."

I concede, as of necessity I must, that this is the law of the state, but I fail to see wherein it applies to the case at bar. Alimony *in futuro,* is a personal right which may not be assigned, encumbered, or bargained away. First, because it is not in being and secondly, because under our cases it is subject to modification or suspension. But once it accrues, such an award assumes an altogether different character. It then comes "into *esse.*" The recipient is protected in its enjoyment by federal and state constitutional provisions. Upon the wife's bankruptcy, it passes to the trustee up to the filing of the petition. Subsequent thereto it goes to the wife. It may be reached by creditors in proceedings supplementary to execution. *Bolton* v. *Bolton, 86 N. J. Law 69; 89 Atl. Rep. 1014; affirmed, 86 N. J. Law 622; 92 Atl. Rep. 389.* It does not follow that merely because money comes into a woman's possession by way of alimony, it is exempted from the payment of just debts. True the court will exercise great circumspection in seeing that one so situated shall not be victimized, but we cannot give sanction to the proposition that such an allowance when it accrues, is sacrosanct; and enjoyable only by the recipient, and beyond the reach of her creditors generally, and her solicitor particularly. Alimony when, if, and as it accrues is as much available for the satisfaction of just debts as any other property. Where an adjudication is made by this court granting an allowance for services to an unpaid solicitor, alimony payments made and being made under one of our decrees will be so controlled as to do substantial equity. The right of both parties will be considered. Our decree may be amended so as to require the husband to pay his alimony in the first instance, to the clerk of this court, who thereupon will deduct therefrom such amount as may be directed and pay the surplus over to the wife. What this deduction shall be must in every case depend upon its circumstances. Where the award is small, necessarily but little will be deducted.

The last contention made by the respondent, namely that contracts between a solicitor and his client for compensation out of alimony payments are void, is without force. In the instant case no claim to a contract for payment out of alimony is alleged by the petitioner. His contention is that he entered into a definite agreement with the respondent under which she was to pay him the sum of $2,000 for services rendered by him to September, 1934, and to pay him a reasonable sum for services to be rendered by him thereafter, the value of which he fixes at $500. Nowhere is the contention made that these payments were to be made out of her alimony award. It is quite conceivable that she was possessed of an independent estate. While the case of *Lynde* v. *Lynde, supra,* outlaws agreements between solicitor and client for the compensation of the former on a percentage basis out of alimony, nevertheless, it does not say that alimony payments may not be applied to the satisfaction of an award made to the solicitor for his services. In fact, this is precisely what was done by the court in that case. It directed the payment of the moneys into court by the solicitor and then ordered that therefrom he be allowed a reasonable sum for his services.

The final decree will be opened and amended in accordance with the petitioner's prayer, with this further proviso, that the counsel fee allowed shall be included in the taxed costs. I will hear Mr. Trier's application to have his compensation determined by proceedings in accordance with our usual practice. If an allowance is ultimately made to him and he is unable to obtain satisfaction thereof in the usual way, by execution, I will advise an order directing the defendant in the main cause to make his alimony payments to the clerk of this court in the first instance, who will then be directed to deduct therefrom such sum as may be determined by this court, on notice, and pay the balance thereof to the respondent.