**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0192-18T1

LISA D. STEFFENS,

       Plaintiff-Respondent/
Cross-Appellant,

v.

ROBERT S. STEFFENS,

       Defendant-Appellant/
Cross-Respondent.

_____

          Argued October 2, 2019 – Decided December 27, 2019

          Before Judges Yannotti, Hoffman and Firko.

          On appeal from the Superior Court of New Jersey, Chancery Division, Family Part, Somerset County, Docket No. FM-18-0749-15.

          Andrew M. Shaw argued the cause for appellant/cross-respondent (The DeTommaso Law Group, LLC, attorneys; Andrew M. Shaw, on the briefs).

          John E. Clancy argued the cause for respondent/cross appellant (Townsend, Tomaio & Newmark, LLC, attorneys; John E. Clancy, on the briefs).

PER CURIAM

In November 1994, the parties signed a prenuptial agreement (the Agreement); the following day, they married. Nearly twenty years later, plaintiff filed for divorce and sought a declaratory judgment invalidating the Agreement. After a plenary hearing, the trial court ultimately upheld the Agreement, finding it valid and enforceable. Plaintiff now appeals from the order upholding the Agreement, and both parties appeal from the final judgment of divorce. We affirm.

I.

In late September 1994, defendant asked plaintiff to sign a prenuptial agreement as he had already gone through two divorces. Defendant made it clear that he would not marry plaintiff without a prenuptial agreement. Prior to signing, both parties had independent counsel review the Agreement. Both parties then signed the Agreement, with plaintiff also signing a document confirming her counsel advised against her signing it.

The Agreement contained provisions concerning alimony and the division of property should the marriage fail. The parties agreed that, during the marriage, each could accumulate property in their own names which would not be subject to division. They also agreed that each spouse would "remain free to

A-0192-18T1

decide the precise use" of his or her income.  The Agreement contained "no provision . . . with respect to the payment of their living expenses during the marriage."

The Agreement called for alimony payments to plaintiff, should the parties divorce, dependent on the length of the marriage.  The Agreement provided for the following alimony payments for plaintiff:

Years 1 to 5: $10,000/year (for $50,000)

Years 6 to 10: $15,000/year (for $75,000)

Years 11 to 15: $20,000/year (for $100,000)

Years 16 to 26 []: $25,000/year (for $275,000)

Thus, if the marriage lasted twenty-six years, plaintiff would receive a total of $500,000 in alimony payments.[1]  Both parties waived the right to assert a claim against the other to maintain the marital standard of living.  The parties further acknowledged the Agreement constituted the entirety of their agreement relating to their marriage and waived "any and all rights . . . to share in the separate property of the other party as a result of the marital relationship . . . ."

---

[1]  The Agreement provided that the amount of alimony owing "shall be paid to [plaintiff] over a course of five (5) years in equal bi-monthly installments."

3

The Agreement also contained a provision that the parties would pay their own counsel fees regarding the negotiation, preparation, review and execution of the Agreement. It further provided,

> Should either party fail to abide by the terms of this Agreement, then the defaulting party will indemnify and hold the other harmless for all expenses and costs, including attorney's fees and disbursements, incurred in successfully enforcing this Agreement, or asserting or defending his or her rights hereunder as against the other party or third parties.

By the time the parties married, plaintiff had earned a master's degree in International Business from Georgetown University and worked at a Manhattan bank as vice-president of international banking. Defendant ran several businesses, including a multi-million-dollar printing press and ink manufacturing business he took over from his father.

After the parties married, plaintiff left her job, which previously paid her a maximum of $56,008 per year. She became a stay-at-home mom to the parties' children until 2000, when she began to perform administrative and clerical duties for defendant's company, earning a maximum of twenty-five dollars per hour. The most she earned in a year at defendant's company was $48,627. After their divorce, plaintiff took a position with a food importer, earning a salary of $67,008 per year.

A-0192-18T1

In her complaint, plaintiff asserted claims of fraud, duress, and insufficient time as reasons for the court to declare the Agreement unenforceable. After the court granted defendant summary judgment as to the claims of fraud, duress, and insufficient time to review the Agreement, plaintiff amended her complaint to assert a claim the Agreement was unconscionable. The trial court declined to grant summary judgment as to plaintiff's unconscionability claim, holding that factual issues existed, requiring a plenary hearing, as to whether the "agreement would render respondent without a means of reasonable support, as described in N.J.S.A. 37:2-32(c)(1)."

The trial court initially issued an order stating that it could consider the marital standard of living in determining whether the Agreement was unconscionable. Defendant later filed a motion in limine to exclude evidence relating to the marital standard of living. The court heard argument on the motion in limine the same day as the hearing on unconscionability. The court granted defendant's motion, excluding evidence on the marital lifestyle. Plaintiff did not seek an adjournment in light of that decision. Further, plaintiff's counsel informed the court he was ready to proceed with the unconscionability hearing.

A-0192-18T1

Following a plenary hearing where both parties testified, the court rejected plaintiff's unconscionability claim and upheld the Agreement as valid and enforceable. The court found plaintiff's job provided her roughly $67,000 in yearly income, including an option for a 401(k) account. She anticipated receiving $500 in monthly retirement benefits from a separate pension. She also had more than $379,000 in assets and would receive $350,000 in alimony under the Agreement. Her monthly expenses amounted to little more than $2000, and she lived with her parents, whom she described as "wealthier than defendant." Noting that plaintiff "is slated to inherit a minimum of [two million dollars] upon her parents' passing," the court determined plaintiff had reasonable means of support, and upheld the Agreement.

In July 2018, the court held the divorce trial, where plaintiff sought "a credit for her sole income having been dissipated during the marriage [and] for contribution to the defendant's Alexandria properties" based on an alleged oral contract, predating the Agreement. The court rejected plaintiff's claim for a credit, finding plaintiff lacked credibility. The court also rejected defendant's application for attorney's fees, stating that plaintiff's attempt to contest the validity of the agreement did not amount to a violation of the Agreement.

These cross-appeals followed.

A-0192-18T1

## II.

Appellate "review of a trial court's fact-finding function is limited." Cesare v. Cesare, 154 N.J. 394, 411 (1998). "The general rule is that findings by the trial court are binding on appeal when supported by adequate, substantial, credible evidence." Id. at 411-12 (citing Rova Farms Resort, Inc. v. Inv'rs Ins. Co. of Am., 65 N.J. 474, 484 (1974)). This is particularly true in matters emanating from the Family Part, because of its special expertise. Ibid. Consequently, the factual findings and legal conclusions reached by the Family Part trial judge will not be set aside unless the court is "'convinced that they are so manifestly unsupported by or inconsistent with the competent, relevant and reasonably credible evidence as to offend the interests of justice' or . . . we determine the court has palpably abused its discretion." Parish v. Parish, 412 N.J. Super. 39, 47 (App. Div. 2010) (quoting Cesare, 154 N.J. at 412). However, no special deference is owed to the trial court's conclusions of law. Manalapan Realty, LP v. Twp. Comm. of Manalapan, 140 N.J. 366, 378 (1995).

Prenuptial agreements are enforceable assuming full disclosure and comprehension, and absent unconscionability. Rogers v. Gordon, 404 N.J. Super. 213, 219 (App. Div. 2008). Pursuant to N.J.S.A. 37:2-38, the party seeking to invalidate a prenuptial agreement must prove by clear and convincing evidence that "[t]he party executed the agreement involuntarily[,]" or the

7

agreement is unconscionable. N.J.S.A. 37:2-38(c) also provides that an agreement is unconscionable if, before the execution, the party:

> (1) Was not provided full and fair disclosure of the earnings, property and financial obligations of the other party;
>
> (2) Did not voluntarily and expressly waive, in writing, any right to disclosure of the property or financial obligations of the other party beyond the disclosure provided;
>
> (3) Did not have, or reasonably could not have had, an adequate knowledge of the property or financial obligations of the other party; or
>
> (4) Did not consult with independent legal counsel and did not voluntarily and expressly waive, in writing, the opportunity to consult with independent legal counsel.

## A.

We first address the issues raised by plaintiff in her cross-appeal. Plaintiff argues the trial court erred by finding that the Agreement is not unconscionable. She contends the court's analysis was flawed because the court failed to consider the parties' marital lifestyle in determining whether enforcement of the Agreement leaves her with reasonable support. Plaintiff further argues the court erred by granting defendant's motion in limine, which precluded her from presenting evidence regarding the parties' marital lifestyle.

A-0192-18T1

Here, the parties agreed that the enforcement of the Agreement is governed by the Uniform Prenuptial Agreement Act (UPAA), N.J.S.A. 37:2-31 to -41, which was in effect before it was amended in 2006 and 2013. In pertinent part, the UPAA provided that a premarital agreement is enforceable unless the party seeking to set aside the agreement proves by clear and convincing evidence that the agreement was unconscionable when it was executed, either due to a lack of property or un-employability:

> (1) [w]hich would leave a spouse . . . without a means of reasonable support.
>
> (2) [w]hich would make a spouse . . . a public charge; or
>
> (3) [w]hich would provide a standard of living far below that which was enjoyed before the marriage . . . .
>
> [N.J.S.A. 37:2-32 (prior to amendment).] [2]

The trial court found that enforcement of the Agreement would not leave plaintiff without a means of reasonable support. The court noted that plaintiff

---

[2] In 2013, the Legislature adopted a statutory amendment to the UPAA that severely restricts the grounds for setting aside a prenuptial agreement. See N.J.S.A. 37:2-32; N.J.S.A. 37:2-38. As noted by defendant, "the entire unconscionability analysis over which the parties litigated in this matter (because their agreement was executed in 1994) has been excised from the statutory scheme."

has monthly expenses of $2033. She will receive alimony of $70,000 per year for five years, has assets of $379,120, and the ability to earn $67,000 per year. Plaintiff anticipates receiving $500 per month in a pension and is slated to inherit at least $2,000,000 when her parents pass away. We conclude the record contains sufficient credible evidence supporting the trial court's finding that enforcement of the Agreement will not leave plaintiff without a means of reasonable support.

Plaintiff argues, however, that the court was obligated to consider the marital lifestyle in determining the issue of "reasonable support." Plaintiff contends that the motion judge failed to abide by an earlier ruling by another judge, who previously ruled that marital lifestyle was one of the factors that should be considered in addressing the "reasonable support" issue.

Because the plain language of the UPAA did not require consideration of marital lifestyle, the motion judge was not bound by that earlier decision. It is well-established that "the trial court has the inherent power, to be exercised in its sound discretion, to review, revise, reconsider and modify its interlocutory orders at any time prior to the entry of final judgment." Johnson v. Cyklop Strapping Corp., 220 N.J. Super. 250, 257 (App. Div. 1987). In Lombardi v. Masso, 207 N.J. 517, 536-37 (2011), our Supreme Court acknowledged that

10

> where a litigation has not terminated, an interlocutory order is always subject to revision where the judge believes it would be just to do so. The rules governing final judgments, for example, that evidence must be newly discovered to be considered, R. 4:50-1(b), do not apply in the interlocutory setting. Nor is the judge constrained, as would a reviewing court be, by the original record.
>
> [Id. at 536-37.]

Thus, "the stringent constraints imposed on final judgments and orders under Rule 4:50-1 . . . are wholly inapplicable to interlocutory orders." Id. at 534. "Interlocutory orders are always subject to revision in the interests of justice." Id. at 536.

## B.

In his appeal, defendant challenges the trial court's decision denying his claim for attorney's fees. Defendant argues the Agreement entitled him to fees due to plaintiff's unsuccessful challenge of the Agreement as unconscionable and her unsuccessful dissipation argument. He asserts plaintiff proceeded in bad faith by "repeatedly [seeking] relief for which she knew or should have known that no reasonable argument could be made and intentionally misrepresented the facts." We disagree.

Challenging the validity of the Agreement did not constitute a "fail[ure] to abide by the terms" of the Agreement. Indeed, the Agreement does not

11

contain a provision concerning challenges to the validity of the Agreement. Thus, defendant's argument lacks merit. Nor do we find any abuse of discretion on the part of the trial court in denying defendant's request for counsel fees for plaintiff's unsuccessful attempt to obtain reimbursement for dissipation and contributions to living expenses.

Additionally, defendant argues he should have been awarded attorney's fees based on his claim that plaintiff pursued her claims in bad faith. When a party's claim survives summary judgment, that party cannot "be deemed to have litigated [a] matter in bad faith." United Hearts, LLC v. Zahabian, 407 N.J. Super. 379, 394 (App. Div. 2009). Because plaintiff's unconscionability claim survived summary judgment, we conclude the trial court did not abuse its discretion when it rejected defendant's bad faith claim. See Strahan v. Strahan, 402 N.J. Super. 298, 317 (App. Div. 2008) ("We will disturb a trial court's determination on counsel fees only on the 'rarest occasion,' and then only because of clear abuse of discretion." (citing Rendine v. Pantzer, 141 N.J. 292, 317 (1995))).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

12